

**Ruben T. Varela**
2249 Camino Del Sol
Fullerton, California  92833
Plaintiff in Pro Per

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Ruben T. Varela,** | Case No.: SACV11-00888-JVS(MLGx) |
| Plaintiff, | **MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)** |
| vs. | |
| **TATE & KIRLIN ASSOCIATES, INC.,** | DATE:        November 28,  2011 |
| Defendant(s) | TIME:           1:30 p.m. |
| | COURTROOM: 10-C |
| | JUDGE:       Hon. James V. Selna |

## I. INTRODUCTION

1.  Plaintiff respectfully submits this Opposition to Defendant's Motion to Dismiss Pursuant to FRCP 12(b)(6) ("MTD") for failure to state a claim upon which relief could be granted.  Plaintiff has pleaded sufficient facts to state a claim under the Fair Credit Reporting Act ("FCRA") 15 U.S.C. §1681b, the Fair Debt Collection Practices Act ("FDCPA") 15 U.S.C. §1692 *et seq*., and California's Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act") Cal. Civ. Code

§1788 *et seq*.   Moreover, the First Amended Complaint ("FAC") specifies that Defendant Tate & Kirlin Associates, Inc. ("TAK") illegally pulled Plaintiff's consumer report.   The factual base of Plaintiff's allegations against TAK is crystal clear:

> "*10.   During the month of July, 2010, Defendant initiated a soft pull of Plaintiff's consumer report from Trans Union, LLC ("Trans Union") without a permissible purpose. (Emphasis added.)*

2. If true, and Plaintiff affirmatively asserts that this statement is true, ¶10 of the FAC is inherently a clear-cut violation of the Fair Credit Reporting Act ("FCRA").

3.   Plaintiff's FAC also specifies that Defendant TAK, after receiving a Notice of Pending Lawsuit ("NPL") containing alleged violations of law by Defendant TAK, communicated with Plaintiff after a time period not authorized by Plaintiff (FAC ¶25) and for a purpose that was not expressly granted under the NPL (FAC ¶26), and therefore impermissibly communicated with Plaintiff at a time or place known, or which should have been known to be inconvenient to the Plaintiff.  The factual base of Plaintiff's allegation is crystal clear:

> "*28.   Defendant communicated with Plaintiff without Plaintiff's prior consent, in connection with the collection of a debt, at a time or place known*

*or which should be known to be <u>inconvenient</u> to Plaintiff." (Emphasis added.)*

4. If true, and Plaintiff affirmatively asserts that this statement is true, ¶28 of the FAC is inherently a clear-cut violation of the FDCPA.

5. Plaintiff's FAC further specifies that Defendant TAK failed to provide Plaintiff with lawful written debt verification notice after initially communicating with Plaintiff on May 16, 2011, in connection with its attempt to collect the alleged debt.

*"29. Defendant failed to send Plaintiff any written debt verification notice within five days after Defendant's initial communication with Plaintiff on May 16, 2011, in connection with the collection of an alleged debt, as required by 15 U.S.C. §1692g(a) et seq."*

6. If true, and Plaintiff affirmatively asserts that this statement is true, ¶29 of the FAC is inherently a clear-cut violation of the Fair Debt Collection Practices Act ("FDCPA").

7. Plaintiff's allegations are supported by Defendant TAK's own admissions as presented in its motion, and the Defendant has provided no admissible evidence, facts, circumstances or existing law that would justify granting its motion to dismiss.

///

## II. ARGUMENT

8.  In its motion to dismiss, Defendant TAK outlines 5 reasons why Plaintiff's FAC fails to state a claim upon which relief can be granted.  The Plaintiff will respond to each, beginning with Defendant TAK's Memorandum of Points and Authorities, section I, ¶(1), which states as follows:

*"(1)  TAK's act of responding to Plaintiff's request to contact him regarding the credit report inquiry did not constitute an "initial communication" triggering any of the requirements under the FDCPA and/or the Rosenthal Act;"  (Emphasis added.)*

9.  The FDCPA was enacted to apply not just to the collection of a debt, but also to activities that are "in connection with the collection of a debt."[1]

10.  The FDCPA was comprehensively written to cover all actions, "directly or indirectly"[2] including "attempts"[3] to collect "alleged"[4] or "asserted"[5] consumer debts.

11.  Defendant TAK admits in its motion that it initiated a soft pull of Plaintiff's consumer report, in connection with the collection of an alleged debt.  As a debt collection firm, Defendant TAK's soft pull of Plaintiff's consumer report

---

[1]  15 U.S.C. §§ 1692c(a), 1691c(b), 1692e, 1692g
[2]  15 U.S.C. § 1692a(2), 1692a(6)
[3]  15 U.S.C. §§ 1692a(6), 1692f, 1692j(a)
[4]  15 U.S.C. §§ 1692a(3), 1692a(5), 1692a(6)(F), 1692g
[5]  15 U.S.C. § 1692a(6)

Memorandum in Opposition to Motion to Dismiss Pursuant to FRCP 12(b)(6)

represented an "*indirect*" collection activity subject to the FDCPA and California's Rosenthal Act.

12.   Defendant TAK admits in its motion that during the phone call between TAK and Plaintiff, it *conveyed information regarding the alleged debt, in connection with its indirect attempt to collect the alleged debt.*   [MTD, section I, A, lines 8-10.]

13.   The FDCPA, 15 U.S.C. §1692a(2) reads:

"The term "*communication*" means *the conveying of information regarding a debt* directly or indirectly to any person through any medium." (*Emphasis added.*)

14.   Defendant TAK did not contact Plaintiff before or after its pull of Plaintiff's consumer report until voluntarily communicating with Plaintiff on May 16, 2011.  Thus, the May 16, 2011 phone call between TAK and Plaintiff clearly qualifies as an "*initial communication*" within the meaning of the FDCPA §1692g(a), and clearly subjected Defendant TAK to **all** of the written or oral debt verification notice requirements set forth in the FDCPA §1692g(a), which reads in relevant part:

"(a) Within five days after the *initial communication* with a consumer *in connection with the collection of any debt*, a debt collector shall, unless the

following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor."

*(Emphasis added.)*

15.  The FDCPA does not require that the "initial communication" with Plaintiff be a direct attempt to collect, but may also be "in connection with the collection" of an alleged debt, as Defendant TAK admits was the case, in order to

subject Defendant TAK to the strict verification notice requirements under section 1692g(a).

16.  Nevertheless, With respect to oral debt verification, at section IV, ¶D, lines 25-26 of its motion, Defendant TAK's motion contends as follows:

> *"Plaintiff was given oral notice of the debt and no further written notice was*
> *required under 15 U.S.C. §1692g(a)." (Emphasis added.)*

17.  This statement is misleading.  *"Oral notice of a debt"* is not defined anywhere in the FDCPA.  The parties agree that information regarding an alleged debt, in connection with the collection of an alleged debt, was conveyed by Defendant TAK to the Plaintiff.  However, while this "oral notice" of the alleged debt may comply with notice required under subsections 1692g(a)(1) –(2), it does not comply with the notice requirements under subsections 1692g(a)(3)–(5).

18.  Defendant TAK's motion supports Plaintiff's allegation that lawful oral debt verification notice was not provided to Plaintiff.  Otherwise, Defendant TAK would not attempt to explain why Plaintiff was not entitled to <u>any</u> debt verification notice in the first place - at section IV, paragraph A:

> *"A communication that does not attempt to collect upon a debt but mearly*
> [sic] *informs the debtor about the current status of their account is not a*
> *communication subject to the strict requirements of the FDCPA."*
> *(Emphasis added.)*

19. Defendant TAK may be correct with respect to a debt that is not in default, but is incorrect with respect to an alleged defaulted debt. Defendant TAK cites *Bailey v. Security National Servicing Corporation*, 154 F.3d 384-389 (7th Cir. 1998) in support of its claim. However, in *Bailey*, defendants Wendover and Security National Servicing Corporation ("*Security*") were not collecting on an alleged defaulted debt, but were instead collecting on a debt under a new forbearance agreement that was <u>current</u>. The appellate court affirmed the district court's ruling that because the subject debt pursued by *Security* was not in default but rather current under a new forbearance agreement, the defendants were not considered "debt collectors" and thus not subject to the verification requirements under the FDCPA. The *Bailey* case bears no relationship to the facts and circumstances of the present action before the Court, nor does it relieve Defendant TAK of its debt verification notice obligations, oral or written, under section 1692g(a).

20. Defendant TAK did not provide Plaintiff with lawful oral debt verification, and therefore the Plaintiff was entitled to written debt verification notice, which Defendant TAK admits it did not provide. Thus, Defendant TAK's violation of FDCPA 15 U.S.C. §1692g(a), due to its failure to comply with the debt verification notice requirements thereof, represents an inherent violation of California's Rosenthal FDCPA, under Cal. Civ. Code §1788.17.

21.  At section I, ¶(2) of its motion, Defendant TAK claims:

*"(2) Plaintiff invited TAK to contact him concerning the debt, thereby consenting to TAK's subsequent phone call;" (Emphasis added.)*

22.  Defendant TAK is apparently confused, first claiming in ¶(1) that TAK was "*requested*" to contact Plaintiff "*regarding the credit report inquiry*", and then in ¶(2), claiming TAK was "*invited*" to contact Plaintiff "*concerning the debt*".  In fact, neither is correct, although it is important to note that Defendant TAK's admission that it called Plaintiff "*regarding the credit report inquiry*" and "*concerning the debt*", ¶(2) further supports Plaintiff's allegation that Defendant TAK communicated with Plaintiff "*in connection with the collection of an alleged debt*", and "*conveyed information regarding an alleged debt*" – which clearly subjected Defendant TAK to the debt verification notice requirements under the FDCPA, regardless of whether or not Defendant TAK was "*invited*" or "*requested*" to call Plaintiff.

23.  Nevertheless, Plaintiff clearly laid out in the Notice of Pending Lawsuit ("NPL") the conditions under which consent was granted to Defendant TAK to call Plaintiff's cell phone, stated in the first sentence, which reads:

"This notice is sent as a courtesy prior to filing suit, *to provide an opportunity to amicably **cure*** Tate & Kirlin Associates, Inc. violations of the Fair Credit Reporting Act (FCRA) 15 U.S.C. § 1681b, and the Fair Debt

Collection Practices Act (FDCPA) 15 U.S.C. § 1692 et seq., and California's

Rosenthal Fair Debt Collection Practices Act, California Civil Code §

1788.12 et seq." (***Emphasis*** added.)

24. The key word in the first sentence is "*cure*" - as in "*remedy*". Thus,

Defendant TAK was provided an opportunity and consent to call Plaintiff's cell

phone to "address the matters at hand", with the "matters at hand" being a remedy

of its alleged violations of law – and for **no other purpose.**

25. Defendant TAK admits in its motion that it could have offered to "cure"

or "remedy" Plaintiff's allegations by  providing written debt verification notice to

Plaintiff, as required under 15 U.S.C. § 1692g(a), but elected not to do so.

26. Having considered the verification notice requirements under the

FDCPA, and the five day window Plaintiff granted Defendant TAK to

communicate with Plaintiff, Defendant TAK admits that it disregarded the

conditions under which consent to contact Plaintiff was granted and called Plaintiff

not to cure or remedy Plaintiff's allegations, or discuss an amicable settlement -

but to convey unsubstantiated, incomplete information regarding an alleged debt,

in connection with its indirect attempt to collect an alleged debt – without lawful

notice under the FDCPA, which Defendant TAK then illegally attempted to pass

off as all the debt validation notice TAK was required to provide, and that was all

the Plaintiff was entitled to.

27.  Nowhere in Plaintiff's NPL does Plaintiff grant Defendant TAK consent to call Plaintiff's cell phone to convey unsubstantiated, incomplete information regarding an alleged debt in an attempt to justify its illegal collection activities and then knowingly deprive Plaintiff of his right to lawful debt validation and debt verification notice.  Defendant TAK - a debt collection firm – knew that permission to call Plaintiff for such a purpose was not granted by the Plaintiff, regardless of *when* the call was made, and *should* *have* *known* that such an unlawful communication would be *inconvenient* to the Plaintiff, thus representing a clear violation of 15 U.S.C. §1692c(a)(1), which reads in relevant part:

"(a) COMMUNICATION WITH THE CONSUMER GENERALLY. *Without the prior consent of the consumer given directly to the debt collector* or the express permission of a court of competent jurisdiction, *a debt collector may not communicate with a consumer in connection with the collection of any debt—*

(1) *at* any unusual time or place or *a time or place known or which should be known to be inconvenient to the consumer.*" *(Emphasis added.)*

28.  Defendant TAK's violation of section 1692c(a)(1) represents an inherent violation of California's Rosenthal FDCPA, Cal. Civ. Code §1788.17.

29.  At section I, ¶(3) of its motion, Defendant TAK claims:

- 11 –

*"(3) The debt amount, character, and status were never misrepresented by*

*TAK.  Plaintiff has not alleged any facts challenging the validity of the*

*debt or alleging that TAK misrepresented the debt amount, character, or*

*status;" (Emphasis added.)*

30.  The first sentence of ¶(3) amounts to nothing more than "hearsay".

Defendant TAK's attorneys Jeanne L. Zimmer ("Zimmer") and Keith A. Yeomans

("Yeomans") of CARLSON & MESSER LLP, have no firsthand knowledge as to

the accuracy of the amount, character or status of the alleged debt, nor has Zimmer

and Yeomans specified that any evidence supports their claim, or that any

evidentiary support of their claim is likely after a reasonable opportunity to

investigate further.  Instead Zimmer and Yeomans attempt to mislead the Court by

introducing baseless, unsworn testimony couched as "fact", which should not be

considered or tolerated by the Court.[6]

31.  The Plaintiff disputed the alleged debt with TAK during the phone call

of May 16, 2011, and referenced this in its FAC (¶26).  The alleged debt is

baseless.  Therefore any representation of the amount, character, or status of the

alleged debt is baseless.

---

[6] See *Trinsey v. Pagliaro*, 229 F. Supp. 647 – Dist. Court, ED Pennsylvania (May
28, 1964); and 415 Pa. 580 - Pa: Supreme Court (1964) [Appeal quashed] -
*"Statements by counsel in their briefs or argument…are not sufficient for purposes
of granting a motion to dismiss or summary judgment."*

32.  At section IV, lines 16-18, Defendant TAK's motion further contends:

*"It is undisputed that the debt at issue was the result of a voluntary credit transaction and that TKA [sic] obtained Plaintiff's credit report because it was assigned to collect Plaintiff's debt."*

33.  This contention represents another example of nothing more than "hearsay" offered by Defendant TAK's attorneys, Zimmer and Yeomans, neither of whom have any firsthand knowledge of the legitimacy of the alleged debt, or Defendant TAK's right to directly or indirectly collect, or attempt to collect the alleged debt, nor has Zimmer and Yeomans specified that any evidence supports their claim, or that any evidentiary support of their claim is likely after a reasonable opportunity to investigate further.  Instead, Zimmer and Yeomans have attempted to mislead the Court by introducing baseless, unsworn testimony couched as "fact", which should not be considered or tolerated by the Court.[7]

34.  Defendant TAK's MTD is *littered* with one baseless contention after another by Zimmer and Yeomans, which they repeatedly attempt to introduce as "undisputed fact", without any mention of evidence supporting their claims, or specifying that evidentiary support is likely after a reasonable opportunity for further investigation.  Attorneys Zimmer and Yeomans have no firsthand knowledge of ANY of the facts or circumstances in the present action, and

---

[7] *Ibid.*, page 12.

therefore each such baseless statement is an egregious attempt to mislead the Court.

35.  According to Zimmer and Yeomans, Defendant TAK pulled Plaintiff's consumer report because it had a "legitimate" debt to collect, and a "legitimate" basis to collect, or attempt to collect.  However, if such were the case, then Defendant TAK should have been **eager** to "remedy" Plaintiff's allegations by offering Plaintiff <u>lawful</u> written or oral <u>validation</u> and <u>verification</u> <u>notice</u> of the alleged debt, which to date, Defendant TAK admits it has refused to provide.

36.  Defendant TAK's false representation of the amount, character, and status of the alleged debt owed by Plaintiff violated the FDCPA 15 U.S.C §1692e(2)(A), and thus represents an inherent violation of California's Rosenthal FDCPA, under Cal. Civ. Code §1788.17.

37.  At section I, ¶(4) of its motion, Defendant TAK claims:

*"(4) Plaintiff was not entitled to any written notice following the phone call between TAK and Plaintiff;" (Emphasis added.)*

38.  This claim does not square with the plain language and meaning of the FDCPA, given Defendant TAK's own admissions.  The debt verification notice requirements under the FDCPA apply to Defendant TAK regardless of whether its communication with Plaintiff was invited or not, and whether or not it was a direct attempt to collect or "in connection with the collection" of a debt.  Defendant TAK

did not provide lawful debt verification notice as required under the FDCPA because, as it specifically and incorrectly claims, the Plaintiff was not entitled.

39.  The Plaintiff <u>was</u> entitled to full debt verification notice pursuant to the FDCPA either during or after the phone call between Defendant TAK and Plaintiff, which Defendant TAK admits it did not provide, thus violating the FDCPA §1692g(a), which represents an inherent violation of California's Rosenthal Act, Cal. Civ. Code §1788.17.

40.  At section I, ¶(5) of its motion, Defendant TAK claims:

*"(5) TAK's alleged inquiry into Plaintiff's credit report was allowed under the FCRA because TAK was assigned to collect a debt owed by Plaintiff." (Emphasis added.)*

41.  At section IV, page 8, lines 16-18, Defendant TAK's motion contends as follows:

*"It is undisputed that the debt at issue was the result of a voluntary credit transaction and that TKA [sic] obtained Plaintiff's credit report because it was assigned to collect Plaintiff's debt.  FAC ¶22." (Emphasis added.)*

42.  Plaintiff's FAC ¶22 does not affirm the validity of the debt.  It alleges that Defendant TAK conveyed information regarding a debt, in connection with the collection of a debt.

43.  Once again - Zimmer and Yeomans boldly offer the Court nothing more than "hearsay", as neither has any firsthand knowledge of the nature or legitimacy of the alleged debt or Defendant TAK's lawful right to directly or indirectly collect, or attempt to collect the alleged debt, or the full content of the phone call between Defendant TAK and Plaintiff, nor has Zimmer and Yeomans specified that any evidence supports their claim, or that any evidentiary support of their claim is likely after a reasonable opportunity to investigate further.  Instead Zimmer and Yeomans attempt to mislead the Court by introducing baseless, unsworn testimony into the record couched as "fact", which should not be considered or tolerated by the Court.[8]

44.  Defendant TAK has failed to provide any admissible evidence, facts or circumstances that establish the legitimacy, or validity of the alleged debt owed by Plaintiff, or its right to directly or indirectly collect, or attempt to collect any alleged debt owed by Plaintiff.

45.  Defendant TAK has failed to provide any admissible facts, evidence, circumstances or existing law that would justify granting its motion to dismiss.

46.  Plaintiff respectfully requests that the Court take notice of the well-pleaded allegations of the *pro se* Plaintiff's First Amended Complaint, which this

---

[8] *Ibid.*, page 12.

Memorandum in Opposition to Motion to Dismiss Pursuant to FRCP 12(b)(6)

Court must accept as true at this juncture of the proceedings, and which, in light of the Plaintiff's *pro se* status, the Court must construe liberally, and hold to a less stringent standard than formal pleadings drafted by an attorney.  [See *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed. 2d 652 (1972)]

## III.  CONCLUSION

47.  For the reasons stated above, this Court should deny Defendant TAK's Motion to Dismiss, and order its attorneys, Jeanne L. Zimmer and Keith A. Yeomans of CARLSON & MESSER LLP, to show cause as to why their repeated attempts to introduce baseless contentions couched as undisputed fact without referencing supporting evidence or likely evidentiary support after a reasonable opportunity for further investigation, has not violated FRCP 11(b)(3), and should not be sanctioned therefore.

48.  In the interests of justice, in the event that Plaintiff's FAC is deficient in any manner, the Plaintiff respectfully requests that the Court grant Plaintiff leave to amend the FAC.

Respectfully submitted,

Dated: <u>November 7, 2011</u>

By: _____

Ruben T. Varela
*Plaintiff in Pro Per*

Memorandum in Opposition to Motion to Dismiss Pursuant to FRCP 12(b)(6)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing will be mailed to all parties this 7th day of November, 2011.

Respectfully,

Ruben T. Varela,
Plaintiff in Pro Per
2249 Camino Del Sol
Fullerton, CA  92833
(714)864-0150
rtvarela@yahoo.com